# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KAREN MCAFEE, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00005 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     Introduction**

Plaintiff Karen McAfee sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in December 2009, alleging disability since July 1, 2006.[2]  (*PageID##* 154-60).  She claims disability due to severe depression and an anxiety disorder.  (*PageID#* 199).

 After various administrative proceedings, Administrative Law Judge ("ALJ") Theodore W. Grippo denied Plaintiff's DIB application based on his conclusion that

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Plaintiff previously filed for DIB in March 2009 (*PageID##* 150-53), her claim was denied initially (*PageID#* 89, 195), and Plaintiff did not appeal that determination. The ALJ declined to reopen the prior application.  (*PageID#* 43).

1

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 40-54). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. # 15), the administrative record (Doc. # 6), and the record as a whole.

## II.   Background

### A.   Plaintiff's Testimony

Plaintiff was 52 years old on her date last insured and is thus considered to be "a person closely approaching advanced age" for purposes of resolving her DIB claim. *See* 20 C.F.R. §404.1563(d); *see also, PageID##* 52, 154. Plaintiff has a high school education, with three years of college. (*PageID##* 52, 207). Plaintiff has past relevant work experience as an appointment clerk, data entry clerk, order clerk, and residence supervisor. (*PageID##* 52, 200).

Plaintiff testified at the administrative hearing that the last time she worked was as part of a six-week job readiness training program through Goodwill Industries. (*PageID#* 66-67). As part of the training, she worked in an ophthalmologist's office for two weeks to "see if [she] could go back to work or if [she] could be trained," and was paid $8/hour. (*PageID#* 66). She stated she completed the training program in January 2010 and

proceeded on to the next part of it, which "was to go in to work with a[n] employment counselor to help me prepare my resume, and look for jobs, apply for jobs, and when I would go in for my appointments, I had anxiety attacks, so I wasn't able to complete that part of it." (*PageID#* 67). She testified to having attacks at least 2 to 3 times per month which would last for an hour. (*Id.*). When she has a panic attack, Plaintiff testified that she shakes, cries, and feels afraid. (*Id.*).

She was taking the medication Xanax, but stopped taking it because, "I felt it affected my thinking, it affected my ability to concentrate, and to process information. I felt like I was walking around in a fog." (*PageID#* 68). At the time of the hearing, she stated her medications were working better: "I don't have that feeling of being in a fog all the time." (*PageID#* 69).

Plaintiff also testified that she took medication for depression. (*Id.*). She described her symptoms as not being able to do the things that she normally would do, such as getting up, eating, and getting dressed. She noted she was "not interested in anything. It's a real heavy feeling." (*PageID#* 70). She testified that she experiences a couple of periods each month where she is not able to get up, get dressed, or wash up. (*Id.*). Her anxiety symptoms fluctuates in response to stress. (*PageID##* 74-75). She never knows when her anxiety symptoms will "come on" and when her symptoms start, she must wait for them to "run its course." (*Id.*).

Plaintiff testified that living with her mother was stressful for her. Her elderly mother has health issues and Plaintiff "help[s] her to make sure she has what she needs

3

and that she's okay." (*Id.*).  Plaintiff also testified that she does the shopping for the household, "when I can" – meaning sometimes she has to "make [herself]" go shopping. (*PageID##* 70-71).  She explained that she has difficulty attending to household chores and shares cooking duties with other family members.  (*Id.*).  When she is feeling well, she will try to fix enough meals to last for several days.  (*Id.*).

Her hobbies included reading and crochet; she reads nearly every day and finds crocheting to be therapeutic.  (*PageID#* 71).  She has two or three friends who she sees or speaks with on the phone.  (*PageID#* 72).  She has a driver's licence and drives a couple times every week.  (*Id.*).

When cross examined by her counsel, Plaintiff testified that she is in charge of paying the household bills, although sometimes finds it hard because paying bills stresses her out and cause her to "shut down."  (*PageID#* 77).

B.     **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual recitation.

III.    **Administrative Review**

### A. "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

### B. Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a

five-Step sequential evaluation of the evidence. *See PageID##* 44-45; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. 404, Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can he perform his past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    **C.**    <u>**ALJ Grippo's Decision**</u>

Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2011. (*PageID#* 46).

At Step 2 of the sequential evaluation, ALJ Grippo concluded that through the date last insured, Plaintiff had the severe impairments of affective disorder and anxiety disorder. (*Id.*).

The ALJ concluded at Step 3 that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings, including Listings and 12.04 and 12.06.  (*PageID##* 46-47).

At Step 4, ALJ Grippo evaluated Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple to moderately complex tasks in a static environment without strict time production quotas.

 (*PageID#* 47).

The ALJ concluded at Step 4 that through the date last insured, Plaintiff was unable to perform any past relevant work.  (*PageID#* 52).

At Step 5, based on the testimony of the VE, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy.  (*PageID#* 53).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability at any time from July 1, 2006, the alleged onset date, through September 30, 2011, the date last insured.  (*PageID#* 54).

**IV.    Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.  **Discussion**

    A.  **Plaintiff's Contentions**

In Plaintiff's statement of errors, she argues that even though the ALJ purports to grant great weight to the opinion of her treating psychiatrist, Dr. Moody, he failed to incorporate Dr. Moody's conclusions in Plaintiff's RFC without explanation. Plaintiff also argues that the ALJ erred in failing to consider the opinions of Plaintiff's mental health case worker, Julie Barnes. Next, Plaintiff argues that the ALJ's findings regarding Plaintiff's daily activities are unreasonable and unsupported. Plaintiff further argues that the ALJ erred in failing to consider and weigh the opinions of the state agency reviewing psychologist, Dr. Hoffman. (Docs. ## 8, 15).

### B. Analysis

During the sequential analysis, the ALJ determined Plaintiff's RFC. 20 C.F.R. §§ 404.1520(a)(4), 404.1545. RFC is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545. Here, the ALJ found Plaintiff could perform all exertional levels of work but required nonexertional limitations. (*PageID#* 47). Specifically, the ALJ found Plaintiff "can perform simple to moderately complex tasks in a static environment without strict time production quotas." (*Id.*). As the ALJ explained in his decision, in formulating Plaintiff's functional capacity assessment, he considered the opinions and findings of the treating and reviewing medical sources, as well as other evidence of Plaintiff's activities and treatment. (*PageID##* 47-52).

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See*

*e.g.,* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B), 1382c(a)(3)(H)(i)(incorporating § 423(d) for Title XVI); 20 C.F.R. § 404.1545(a) ("the ALJ . . . is responsible for assessing your RFC"). Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work.

20 C.F.R. § 404.1527(d)(2) also explains that "[a]lthough we consider opinions from medical sources on issues such as your RFC, . . . the final responsibility for deciding these issues is reserved to the Commissioner." The regulations do not require an ALJ to rely solely upon medical opinions when formulating a RFC, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2), (3), (4). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ gave great weight to the opinions of Plaintiff's treating psychiatrist at South Community Behavioral Health, Dr. Vicki Moody, D.O, and state agency psychologist, Dr. Jennifer Swain, Psy.D., finding as follows:

> Dr. Moody developed a treating source relationship with the claimant over a significant longitudinal history, while Dr. Swain has experience assessing mental functional capacity under the definition of disability set forth in the Social Security Act. The opinions of Drs. Moody and Swain are consistent with the wide range of activities of daily living reported by the claimant, including preparing meals, reading and watching television, going shopping, crocheting, doing urban ballroom dancing, managing money, going to church, and traveling to Kentucky for homecoming. (Exs. 5E; 27F at 6; 28F at 3). The undersigned also finds it noteworthy that the claimant is able to care for her elderly mother at present and formerly cared for her grandmother. The opinions are also supported by the evidence of improvement and progress after the May 2011 hospital visit, as documented in treatment notes of Ms. Crabill and Dr. Longo. (Ex. 28F). Overall, the opinions of Drs. Moody and Swain are well supported and consistent with the record as a whole.

(*PageID#* 52).  Plaintiff contends the ALJ did not properly incorporate Dr. Moody's conclusions.  (Doc. #8, *PageID##* 880-882).  A review of the record, however, indicates the ALJ did not err in his consideration of Dr. Moody's opinion.  Plaintiff treated at SCBH from July 2006 until at least January 2012.  (*PageID##* 319-46, 355-406, 437-89, 501-640, 664-97, 737-67, 833-65).  The treatment records show Plaintiff was seen for medication management, individual counseling, and case management services.  (*Id.*). On June 24, 2010, Dr. Moody opined that Plaintiff was fully oriented, had a normal flow of conversation, appeared to be dressed appropriately, and had good hygiene.  (*PageID#* 659).  She was capable of appropriate social interaction.  (*PageID#* 660).  Dr. Moody even opined that "[a]t times [Plaintiff] is capable of handling a job," although she believed Plaintiff's "inability to maintain normal mood & functioning on a sustained basis

11

. . . would make it difficult to maintain employment." (*PageID#* 660). Dr. Moody stated that Plaintiff "[c]an maintain normal mood for weeks to few mos. But has tendency to have episodes of severe depression . . . ." (*PageID#* 659). Even so, during these episodes of depression, Dr. Moody stated Plaintiff was only mildly to moderately impaired. (*PageID#* 660).

Such findings are consistent with the findings of Dr. Swain, who reviewed the record on March 4, 2010, and also found Plaintiff's mental abilities to be "not significantly limited" or only "moderately limited." (*PageID#* 655-58). Social Security regulations and rulings expressly recognize that state agency psychologists are "highly qualified psychologists who are also experts in Social Security disability evaluation." *See* 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p; *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion).

The ALJ also considered Plaintiff's subjective complaints in evaluating her RFC, but found they were not entirely credible. (*PageID##* 48-50). The Sixth Circuit has held that it accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003). The ALJ expressly stated that he had considered Plaintiff's subjective complaints in accordance with the requirements of SSRs 96-4p, 96-7p, and 20 C.F.R. § 404.1529 (*PageID#* 48), and set forth the various factors that he had considered in his credibility assessment, including specific citations to

medical records and medical source opinions, objective clinical findings, treatment regimen, medication use, observations at the hearing, and Plaintiff's activities. (*PageID##* 47-50).  For example, while testifying at the administrative hearing, Plaintiff minimized her care giver duties (*PageID#* 70), but she reported to the agency on her Disability Report that she was her mother's "primary" care giver.  (*PageID#* 199).  The ALJ also found that Plaintiff reported caring not only for her mother but also as being a "main" care giver for her grandmother until June 2009.  (*Id.*).  In a progress note from March 2011, Plaintiff told Ms. Burns that "there is no way I can work because I have to take care of mother."  (*PageID#* 741).  In July 2011, Plaintiff stated, "everything is on me and I have no help."  (*PageID#* 848).  The ALJ also noted that, in January 2012, Dr. Longo reported that Plaintiff could do caretaker tasks for her mother and she can do self-care for herself.  (*PageID#* 49, citing to *PageID#* 835).

 Progress notes from SCBH show that, in January 2010, Plaintiff planned to get away for the weekend and rent a room for her birthday.  (*PageID#* 544).  In October 2011, Plaintiff traveled to Kentucky to attend the homecoming at Kentucky State.  (*PageID#* 818).  In January 2012, Plaintiff's psychiatrist, Dr. Longo reported that she attended church services and enjoyed reading, music, and dance.  (*PageID#* 835).  The ALJ recognized that, although Plaintiff described a lack of motivation to do personal care tasks at times, she stated that she could prepare simple meals, do household cleaning, drive an automobile, and attend church services weekly.  (*PageID##* 47, 49, citing to *PageID##* 238-40).  Plaintiff reported watching television, reading, listening to music

13

daily, and shopping in stores by phone, mail, and computer. (*Id.*). Plaintiff's report of hobbies included crocheting and urban ballroom dancing. (*PageID##* 240, 544).

As the record supports the ALJ's incorporation of Dr. Moody's conclusions, as well as Dr. Swain's opinions and Plaintiff's testimony, the Court finds the ALJ reasonably gave great weight to such opinions and properly incorporated the limitations caused by Plaintiff's relatively mild and moderate impairments. Likewise, the ALJ's findings regarding Plaintiff's daily activities are reasonable and supported by substantial evidence.

As to Plaintiff's argument that the ALJ failed to consider the opinion of her case manager, Ms. Julie S. Burns, the Court finds no error in the ALJ's decision not to explicitly weigh her opinion. There is no dispute that Ms. Burns was not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1527(a)(2); *see* SSR 06-03p ("Medical sources who are not 'acceptable medical sources' . . . [include] licensed clinical social workers . . ."). The Sixth Circuit does not require an ALJ to explicitly discuss his evaluation of evidence from a non-acceptable medical source. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (requirement to provide good reasons for the weight given to opinions "only applies to treating sources."); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873 (6th Cir. 2007) ("SSA requires ALJs to give reasons for only *treating* sources.") (emphasis in original). The ALJ's decision nonetheless did consider notes from Plaintiff's treatment with Ms. Burns, including noting Plaintiff's noncompliance with prescribed psychotropic medications in October 2010. (*PageID#* 50,

citing to *PageID#* 756).  In March 2011, Plaintiff told Ms. Burns that her mother was the source of her depressed mood.  When Ms. Burns raised the possibility of supportive employment opportunities, Plaintiff replied, "there is no way I can work, I have to take care of mother."  (*PageID#* 51, citing to *PageID#* 741).  However, because Ms. Burns was not an acceptable medical source, the ALJ did not err by failing to specifically discuss her opinion.

Moreover, Ms. Burns's opinion largely echoed the opinions of other, acceptable treating sources.  As noted above, the ALJ considered those opinions and gave good reasons for assigning them controlling weight.  Thus, even assuming the ALJ somehow erred by not directly discussing Ms. Burns's opinion, such an error was harmless.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (holding that it is harmless error when the ALJ fails to explicitly discuss the opinion of a treating source when the ALJ has indirectly addressed the opinion through his analysis of other evidence).  As Plaintiff points out in her brief, Ms. Burns opined that Plaintiff's ability to attend to competitive work activity would be compromised by poor attendance, difficulty completing tasks, and a lack of motivation secondary to depression.  (*PageID##* 662).  Plaintiff's depression and lessened capacity for concentration was addressed in Dr. Moody's opinion.  (*PageID#* 659). As discussed above, the ALJ accommodated Dr. Moody and Dr. Swain's opinions in his RFC determination.

As to Plaintiff's remaining contention that the ALJ erred by not explicitly considering or discussing the May 2009 opinion of state agency psychologist, Dr. Robyn

Hoffman, Ph.D., the Court finds that even if the ALJ was somehow required to discuss this opinion, his failure to do so was nonetheless harmless as the ALJ would not have been able to credit it given that Dr. Hoffman's May 2009 opinion was formulated upon a different record than that before the ALJ (and presently, the Court).  Specifically, Dr. Hoffman's May 2009 opinion was based upon the record from Plaintiff's March 2009 application, not Plaintiff's present application from December 2009.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) ("The court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence.")(internal citations omitted).  Accordingly, based on the present record, the Court finds the ALJ did not commit any reversible error by not including a discussion of Dr. Hoffman's opinion.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability determination be affirmed; and
2. The case be terminated on the docket of this Court.

January 23, 2015

              s/Sharon L. Ovington
              Sharon L. Ovington
            Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).